UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

UNITED STATES OF AMERICA                                                                        PLAINTIFF

v.                                         No. 3:17-CR-30006

MARK ALAN MOCK                                                                                  DEFENDANT

**OPINION AND ORDER**

Before the Court is Defendant Mark Alan Mock's motion (Doc. 26) and incorporated brief requesting compassionate release in light of the COVID-19 global pandemic or, in the alternative, a transfer to home confinement.  On May 22, 2020, the Court appointed Assistant Federal Public Defender James Pierce to represent Mock and imposed a deadline of June 29, 2020[1] to supplement Mock's motion.  The Government separately obtained Mock's medical records from the Bureau of Prisons ("BOP") and provided those records by email to the Court and Mr. Pierce on May 29, 2020.  On July 6, 2020, the Government filed a response (Doc. 35) opposing compassionate release.  The Court has reviewed the final presentence investigation report, the judgment, the statement of reasons, Mock's motion, his medical records, and the parties' respective briefs on this issue.

On September 19, 2017, Mock pled guilty to one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846.  The statutory penalties applicable to 21 U.S.C. § 841 called for a maximum term of imprisonment of 20 years and a minimum term of supervised release of 3 years.  21 U.S.C. § 841(b)(1)(C).  The Court used the United States Sentencing Guidelines in calculating Mock's sentence based on the offense

---

[1] After conferring with counsel, the Court originally imposed a deadline of June 15, 2020. However, counsel requested a two-week extension in order to confer with his client to ensure a comprehensive and thorough supplement, (Doc. 30), which the Court granted.

1

conviction and relevant conduct. The guidelines recommended a term of imprisonment of 188 to 235 months and a term of supervised release of 3 years. At sentencing, the Court discussed some mitigating factors that supported a sentence below the guideline range but recognized that Mock was responsible for a significant amount of high-purity methamphetamine. The Court sentenced Mock to a term of imprisonment of 120 months and 3 years of supervised release, citing both Mock's history and characteristics and the nature and circumstances of the offense. Mock is serving his sentence in Bureau of Prisons custody at McDowell FCI in Welch, West Virginia. According to BOP's website, Mock's projected release is in November 2025.

In light of the COVID-19 pandemic and his own health concerns, Mock moves for early release from imprisonment or transfer to home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A). 18 U.S.C. § 3582(c)(1)(A)(i) provides that:

> The court may not modify a term of imprisonment once it has been imposed except that . . . in any case . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

The statute requires the Court make three threshold findings: (1) that the defendant has exhausted his or her administrative remedies; (2) that extraordinary and compelling reasons warrant a reduction; and (3) that the sentencing factors outlined in § 3553(a) support release. *Id.*

The Government offers no argument that Mock failed to exhaust his administrative remedies. In the supplement to his motion, Mock included a letter dated April 14, 2020, from the McDowell FCI's Warden denying his request for compassionate release. (Doc. 29, p. 16). Thus, it appears Mock pursued and exhausted his administrative remedies before filing the instant

motion.

With respect to whether "extraordinary and compelling reasons" warrant his release, Mock points to various medical conditions that he alleges make him particularly susceptible to the COVID-19 coronavirus. Specifically, Mock has a history of COPD, kidney disease, Hepatitis C, and achalasia. Mock argues that if he contracts the coronavirus, these health conditions place him at higher risk of complications and could potentially result in his death. Section 1B1.13 of the United States Sentencing Guidelines contains a policy statement issued by the United States Sentencing Commission that describes what circumstances that agency believes constitute "extraordinary and compelling reasons" that would warrant compassionate release. Application Note 1 provides that a defendant's non-terminal medical condition may warrant such release in the following circumstances:

> (ii) The defendant is—
> (I) suffering from a serious physical or medical condition;
> (II) suffering from a serious functional or cognitive impairment; or
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminished the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, *Application Note 1* (2018).

This Court has recognized, as have many other courts around the country, that the conditions in correctional facilities facilitate rapid transmission of the virus and may make it extremely difficult, if not impossible, for certain individuals with serious medical conditions to provide self-care or obtain necessary medical care once they contract the virus. In this case, the Government concedes that Mock's medical conditions "could substantially diminish his ability to provide self-care within the environment of a correctional facility" should he contract COVID-19 and thus constitute an "extraordinary and compelling reason" warranting release. (Doc. 35, p. 7). Having reviewed the medical records provided by the parties, the Court agrees that Mock has

serious medical conditions that put him at higher risk of complications were he to contract the coronavirus. Mock's serious medical conditions combined with the risks posed to him by the novel coronavirus constitute "extraordinary and compelling reasons" warranting his release under 18 U.S.C. § 3582(C)(1)(A).

Though the Government does not oppose Mock's motion on the first two findings under § 3582(c)(1)(A), it does argue that the sentencing factors under 18 U.S.C. § 3553(a) support the denial of compassionate release. After reviewing the parties' arguments and the presentence report, the Court agrees with the Government that the factors warrant the denial of his motion.

The Court finds the nature and circumstances of this offense troubling. Mock was charged in a three-count indictment and ultimately pled guilty to one count of conspiracy to distribute methamphetamine. Law enforcement investigated Mock for approximately a year prior to his arrest in this case. Prior to that arrest, officials conducted a controlled purchase whereby Mock sold ¼ gram of methamphetamine to a confidential source. Officials obtained a search warrant for Mock's residence that same day and located approximately 155.9 grams of high purity methamphetamine. Officers also discovered a television in the master bedroom that was wired to surveillance cameras around the house. Mock was arrested and charged in Newton County, Arkansas with various drug-related felonies. Mock posted bond a few days later.

While on bond, Mock continued to distribute methamphetamine. In January 2017, a confidential source advised law enforcement that a local individual was in the process of obtaining 5 pounds of methamphetamine from a supplier in California and intended to distribute that methamphetamine to individuals in Newton County, including Mock. On April 7, 2017, officials conducted another controlled purchase from Mock and a confidential source purchased ¼ gram of methamphetamine from him. That methamphetamine was sent to the Drug Enforcement

Administration laboratory for testing and the results reflected a 97% purity. Officials eventually arrested Mock on July 21, 2017. As part of that arrest, officials searched his residence and located vacuum seal bags, several cell phones, drug paraphernalia, seven checkbooks, several laptop computers, a loaded .22 caliber Taurus firearm, a Fiocchi .22 caliber long rifle, and ammunition.

The circumstances of the instant offense make clear that Mock had very little, if any, respect for the law. Though Mock was arrested for selling methamphetamine in 2016, he continued selling methamphetamine immediately after being released on bond. Mock suggested he "made a little money" but "was not 'in it big time.'" (Doc. 20, p. 6, ¶ 24). The facts tend to suggest otherwise. Mock possessed over 150 grams of high purity methamphetamine when he was arrested in 2017. In the Court's experience, this amount of high-quality meth is not indicative of a small-time drug dealer. Moreover, Mock possessed at various times a television wired with surveillance cameras, several cell phones, several laptops, and two loaded firearms. In the Court's experience, larger, more sophisticated drug dealers have surveillance cameras in their homes and use multiple cell phones, not small-time dealers. Many of these items appear to have been purchased after Mock was released on bond in 2016. It appears then that Mock not only intended to continue selling drugs but took affirmative steps to avoid detection (and even escalated to purchasing two firearms).

Mock's drug-related crimes are not limited to these two instances. According to the final presentence investigation report, Mock had seven other drug-related charges over a twenty-year period. His criminal history resulted in 15 criminal history points which placed him in a criminal history category VI. Mock admitted he resorted to selling methamphetamine to support his own meth addiction, which began when he was 21 years old. Mock completed in-patient substance abuse treatment in 1994 and 2002 but admitted he relapsed around 2008. Based on his history of

substance abuse and his apparent disregard for the law, the Court is not convinced Mock poses so little risk of recidivism or danger to the public that his motion can easily be granted.

Though the Court has considered many motions for compassionate release due to the COVID-19 pandemic, this case presents one of the closer calls. The Court is tasked with weighing the risks posed by the coronavirus to this defendant (which tend to favor compassionate release) against the sentencing factors under § 3553(a) (which favor denial of compassionate release). Mock has been in custody for approximately 3 years. There is little doubt that if COVID-19 were not a factor in this equation, a sentence of time served would not adequately reflect the seriousness of his offense, nor would it adequately deter others from committing similar crimes.

Therefore, after considering the factors under 18 U.S.C. § 3553(a), the Court will deny the motion. The nature and circumstances of the offense presently outweigh the risks Mock faces during continued detention. The Government points out that there are no active COVID-19 cases in McDowell FCI at this time. The Court has independently confirmed this information on BOP's website, and it appears as if prison officials at McDowell FCI are taking proactive steps to prevent the introduction of the virus into the jail. However, as the last few months have made clear, the circumstances caused by this pandemic can change rapidly. The Court agrees with the parties that Mock's health conditions put him at risk and leave him particularly susceptible to COVID-19, so the Court will deny the motion without prejudice to its refiling. If circumstances at McDowell FCI change, or if there is a material change to Mock's health condition, he may file a renewed motion for compassionate release. Because any forthcoming motion will likely be time-sensitive, any response must be filed within 7 days of the filing of a renewed motion.

In the event such a motion must be filed, and if circumstances or material changes indeed justify the renewed motion, the Court might consider modifying the sentence by imposing an

extended period of supervised release that includes home detention among its conditions. To facilitate that consideration, briefing on the propriety of such a modification would be welcome, particularly with respect to whether any additional conditions could be imposed that might mitigate the concerns discussed in the Court's § 3553(a) analysis. If a renewed motion is filed, the parties are reminded that increasing the term of supervised release would require a new hearing pursuant to Federal Rule of Criminal Procedure 32.1. Both parties should be prepared to participate in an emergency hearing, should the Court find one necessary.

IT IS THEREFORE ORDERED that Defendant's motion for compassionate release (Doc. 26) is DENIED WITHOUT PREJUDICE to its refiling.

IT IS SO ORDERED this 10th day of July, 2020.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE